Argued and submitted September 11, 2000, decision of Court of Appeals affirmed; judgment of district court reversed, and case remanded to circuit court for further proceedings September 19, 2002

## STATE OF OREGON,
*Respondent on Review,*

*v.*

## PHUNTSOK NGAWANG LHASAWA,
*Petitioner on Review.*

(CC 9702-41629; CA A97609; SC S46749)

55 P3d 477

Court of Appeals affirmed; district court reversed; remanded.

Samuel C. Kauffman, Portland, argued the cause and filed the brief for petitioner on review.

Robert M. Atkinson, Assistant Attorney General, Salem, argued the cause for respondent on review. With him on the brief were Hardy Myers, Attorney General, and Michael D. Reynolds. Solicitor General.

Chin See Ming, of Perkins Coie LLP, Portland, filed the brief for *amicus curiae* ACLU Foundation of Oregon, Inc.

Before Carson, Chief Justice, and Gillette, Durham, Leeson, and Riggs, Justices.**

GILLETTE, J. .

---

** Van Hoomissen, J., retired December 31, 2000, and did not participate in the decision of this case; Kulongoski, J., resigned June 14, 2001, and did not participate in the decision of this case; De Muniz and Balmer, JJ., did not participate in the consideration or decision of this case.

## GILLETTE, J.

The City of Portland (the City) has adopted several "civil exclusion" ordinances, under which the City temporarily excludes from designated areas of the city persons who the police have arrested for certain crimes. In the present case, we are asked to decide whether exclusion under one of those ordinances is "jeopardy" for purposes of the former jeopardy provision of the Oregon Constitution or the double jeopardy prohibition in the United States Constitution. If it is "jeopardy," then the person on whom the City has imposed such an exclusion cannot later be prosecuted criminally for the underlying crime. For the reasons that follow, we conclude that exclusion under the ordinance does not create jeopardy. We therefore affirm the Court of Appeals' decision to that same effect.

The following facts are undisputed. In February 1997, defendant was arrested for prostitution, ORS 167.007, a Class A misdemeanor, in an area that the City had designated as a "prostitution-free zone" (PFZ). At the time of the arrest, police issued to defendant a "notice of exclusion" under Portland City Code (PCC) section 14.150.030.[1] The notice stated that, effective six days from the date of the arrest and for a period of 90 days thereafter, defendant was prohibited from entering or remaining in any area of the city that had been designated as a prostitution-free zone. Prostitution-free zones are areas that have been designated as such by the Portland City Council based on the high number of prostitution-related crimes in those areas. PCC § 14.150.010. At the time of defendant's exclusion, the City Council had designated three PFZs that extended along several of the

---

[1] PCC section 14.150.030 provides, in part:

"A person is subject to exclusion for a period of ninety (90) days from the public streets, sidewalks and other public ways in all prostitution-free zones designated in Code Chapter 14.150 if that person has been arrested or otherwise taken into custody within any prostitution-free zone for any prostitution related activities including [list of prostitution-related crimes].

"* * * * *

"If a person excluded from a prostitution-free zone is found therein during the exclusion period, that person is subject to immediate arrest for criminal trespass in the second degree pursuant to ORS 164.245."

City's major thoroughfares and made up approximately three percent of the City's area.

Although defendant was entitled to request a hearing on the validity of his exclusion, he did not to do so.[2] However, when the state later proceeded criminally against defendant on the underlying prostitution charge, he moved to dismiss, arguing that the 90-day exclusion was criminal punishment and that any further attempt to prosecute or punish him for prostitution would constitute former or double jeopardy.

The trial court allowed defendant's motion, holding that criminal prosecution under the circumstances would violate state and federal double jeopardy principles.[3] In reaching that decision, the court employed the Fifth Amendment double jeopardy analysis described and applied by the United States Supreme Court in *United States v. Halper*, 490 US 435, 109 S Ct 1892, 104 L Ed 2d 487 (1989), which since has been disavowed. *See Hudson v. United States*, 522 US 93, 118 S Ct 488, 139 L Ed 2d 450 (1997) (disavowing in large part the method of analysis used in *Halper*). The trial court did not analyze separately defendant's jeopardy challenge under Article I, section 12, of the Oregon Constitution, but instead assumed that the state constitutional analysis would be the same.

On the state's appeal, the Court of Appeals reversed. In a brief per curiam opinion, the court cited its own opinion in *State v. James*, 159 Or App 502, 978 P2d 415 (1999), to the

---

[2] Under the ordinance, an appeal must be filed in writing within five days of the issuance of the notice. During the pendency of the appeal, the exclusion does not take effect. If an affected person does appeal, then a hearing is held. At the hearing, the City has the burden of showing by a preponderance of the evidence that the exclusion is based on conduct that constitutes a targeted prostitution-related crime. PCC § 14.150.160(1).

[3] Defendant's motion to dismiss was combined for purposes of briefing and argument with similar challenges by other criminal defendants who had been subjected to exclusion under the prostitution-free zone ordinance and a similar drug-free zone ordinance. The Multnomah County District Court dismissed all the indictments (including defendant's) in a single order. Only defendant's case is before us on review.

effect that criminal prosecution for a drug crime that previously had triggered civil exclusion under a Portland "drug-free zone" ordinance did not implicate double jeopardy concerns.[4] After noting that the ordinance at issue in the present case was "virtually identical" to the drug-free zone ordinance at issue in *James*, the Court of Appeals held that the trial court had erred in dismissing the indictment against defendant on double jeopardy grounds. *State v. Lhasawa*, 159 Or App 667, 668, 979 P2d 774 (1999).

Defendant petitioned for review. We allowed his petition to decide whether criminal prosecution on prostitution charges of a person who already has been excluded from a PFZ under Portland's civil exclusion ordinance subjects that person to former or double jeopardy. Consistent with our usual practice, we first consider that question under the former jeopardy provision in the Oregon Constitution. *See State v. Kennedy*, 295 Or 262, 262, 666 P2d 1316 (1983) (Supreme Court addresses all issues of state laws before turning to federal constitution).

## I. FORMER JEOPARDY UNDER ARTICLE I, SECTION 12, OF THE OREGON CONSTITUTION

### A. *Multiple Punishments versus Multiple Prosecutions*

Article I, section 12, of the Oregon Constitution, provides that "[n]o person shall be put in jeopardy twice for the same offence." In the present case, the parties agree that indicting and proceeding against defendant criminally will

---

[4] In *James*, the Court of Appeals applied the Fifth Amendment double jeopardy analysis most recently employed by the United States Supreme Court in *Hudson*. Based on that analysis, the Court of Appeals concluded that exclusion orders under the Portland ordinances do not raise double jeopardy concerns under the United States Constitution. *James*, 159 Or App at 507-13. The court then considered the parties' arguments *vis-à-vis* the former jeopardy clause in Article I, section 12, of the Oregon Constitution, which centered on the applicability of the analysis set out in *Brown v. Multnomah County Dist. Ct.*, 280 Or 95, 570 P2d 52 (1977). The Court of Appeals concluded that the *Brown* analysis was not relevant and that a historical investigation like that used in this court's decision in *State ex rel Juv. Dept. v. Reynolds*, 317 Or 560, 857 P2d 842 (1993), would be more appropriate. After noting that the defendant had not offered an argument of that kind, the court concluded that criminal prosecution of an individual who has been subjected to temporary exclusion under the Portland drug-free zone ordinance does not violate the former jeopardy clause of Article I, section 12. *James*, 159 Or App at 513-16.

put him "in jeopardy" within the meaning of Article I, section 12. However, they differ as to whether civil exclusion under the Portland PFZ ordinance already had placed defendant "in jeopardy." Initially, the parties couched their differences in that regard in terms of whether Article I, section 12, prohibits "multiple punishments" in addition to "multiple prosecutions." In the Court of Appeals, the state argued that Article I, section 12, pertains only to multiple criminal *prosecutions* and that defendant had no double jeopardy claim, because he could not show that he already had been subjected to a criminal prosecution.[5] The state appears to have retreated from that view to some degree, and now argues that "jeopardy" may arise out of a *criminal* punishment, *i.e.*, a punishment that lawfully may be imposed only after a criminal prosecution with all of the constitutional protections required in such proceedings. The state also argues, however, that defendant's exclusion under Portland's prostitution-free zone ordinance is not a criminal punishment.

The foregoing focus on whether Article I, section 12, applies to cases of multiple punishment is an unnecessary detour, in our view. Although it may be that multiple punishments that arise out of a single proceeding do not create a double jeopardy issue,[6] that proposition does not describe the circumstances of this case. Here, although there is or will be only one *formal* criminal proceeding, the "punishment" of exclusion has no real connection to that proceeding. Instead, the exclusion arises out of a separate process, which is initiated by an individual police officer's decision to arrest a suspected offender on prostitution charges and which may, if the offender desires, involve a hearing in court before the exclusion takes effect. *See* PCC § 14.150.160 (providing for appeal of exclusion notice).

---

[5] In so arguing, the state adopted the position advanced by Justice Scalia in his dissent in *Department of Revenue of Montana v. Kurth Ranch*, 511 US 767, 128 L Ed 2d 767, 114 S Ct 1937 (1994), that the notion of double jeopardy applying to multiple punishments is a relatively recent construct and does not take into account the fact that, at the time of the drafting of the Fifth Amendment, legislation providing two sanctions for the same misconduct was quite common.

[6] *See State v. Welch*, 264 Or 388, 505 P2d 910 (1973) (holding that cumulation of penalties is not a double jeopardy problem and that double jeopardy does not arise unless a person is "tried" twice).

In this case, then, the question is not whether the former jeopardy prohibition of Article I, section 12, is implicated when lawmakers attach "multiple punishments" to the same conduct in, or by means of, a single criminal prosecution. Rather, it is whether the former jeopardy prohibition applies when, in addition to the ordinary criminal consequences of particular forbidden conduct, a second sanction or consequence is meted out in a separate proceeding that is not, at least in name, a criminal prosecution. So understood, that question really is no different than the question that this court recently addressed in *State v. Selness/Miller*, 334 Or 515, 54 P3d 1025 (2002), *viz.*, was a nominally "civil" proceeding under Oregon Laws 1989, chapter 791, that resulted in forfeiture of a home on the ground that the home was used in illegal manufacture of marijuana, "jeopardy" for purposes of Article I, section 12? We turn to that opinion to aid us in resolving the present case.

## B. *Selness and Former Jeopardy under Article I, Section 12*

In *Selness*, this court set out the following test for determining whether a proceeding, although nominally "civil," amounts to jeopardy for purposes of Article I, section 12. First, we determine whether the legislature (or other governing body) intended the proceeding in question to be civil. If we conclude that the legislature did manifest such an intent, then we look for evidence that, despite the civil designation or intention, the proceeding is "so far criminal in its nature" that it is "jeopardy" within the meaning of Article I, section 12. The latter inquiry focuses on four factors or "indicia": (1) the use of procedures that are strongly associated with the criminal law, such as indictment, arrest, and detention; (2) the potential for imposition of a penalty that is traditionally criminal or "infamous," or that cannot be explained fully in terms of the penalty's supposed civil purpose; (3) the potential for a judgment or penalty that carries public stigma on the individual; and (4) the existence of collateral consequences that amount to criminal penalties, either by themselves or in combination with the direct consequences of the underlying acts. If we conclude, on the basis of our examination of those factors, that the proceeding is criminal in nature, then we will hold that the proceeding is "jeopardy" for purposes of Article I, section 12, and that further criminal

prosecution of the matter is prohibited. *See Selness*, 334 Or at 536 (setting out that test).

C. *Application of Former Jeopardy under Article I, Section 12, to the PFZ Ordinance*

We will not belabor the issue of legislative intent. It is clear that the Portland City Council intended to create a civil process and sanction when it adopted the PFZ ordinance. The question is whether, in spite of the council's intent, the proceeding that results in exclusion under the ordinance is criminal in nature. We answer that question by examining the exclusion procedure in light of the four factors identified in *Selness*.

1. *Use of Procedures Associated with Criminal Prosecution*

■ The use of arrest, detention, or other similar police procedures that ordinarily are associated with criminal law enforcement may suggest that a nominally civil proceeding in fact is criminal in nature. *Selness*, 334 Or at 535-36; *Brown v. Multnomah County Dist. Ct.*, 280 Or 95, 108, 570 P2d 52 (1977). One *amicus* suggests that the criminal nature of the PFZ exclusion process is demonstrated by the fact that, under the PFZ ordinance, arrest for one of the specified prostitution crimes is an essential precondition for issuance of an exclusion order. PCC § 14.150.030. However, although arrest is a necessary precondition to the exclusion process, that process is not part of the criminal prosecution that may follow from the arrest, but arises out of a separate source of law. Indeed, the police have no authority under the PFZ ordinance itself to arrest individuals for committing prostitution-related crimes.[7] Thus, the fact that individuals may be excluded from PFZs only after being arrested for a prostitution crime does not demonstrate that the PFZ exclusion process is criminal, rather than civil.

---

[7] The ordinance does provide for arrest of individuals who trespass into the PFZ in violation of an exclusion order. PCC § 14.150.030. However, that part of the ordinance is not at issue in this case.

## 2. *Nature of the Potential Penalty*

■ Under this second factor, we look to see if the actual or potential sanction is "infamous" or one that traditionally has been regarded as criminal punishment. *Selness*, 334 Or at 536. Defendant suggests that this factor is definitive—that exclusion under the PFZ ordinance is equivalent to banishment, a sanction that has been employed for centuries as criminal punishment. Defendant notes, in that regard, that "banishment" is defined in *Black's Law Dictionary* 183 (Rev 4th ed 1968) as "a *punishment* inflicted upon criminals, by compelling them to quit a city, place or country for a specified period of time, or for life." Defendant also notes that the United States Supreme Court has referred to banishment as a "harsh punishment," even in the eyes of those who were "accustomed to brutality in the administration of criminal justice." *Kennedy v. Mendoza-Martinez*, 372 US 144, 168 n 23, 83 S Ct 554, 9 L Ed 2d 644 (1963) (quoting David W. Moxey, *Loss of Nationality: Individual Choice or Government Fiat?* 26 Albany L Rev 151, 164 (1962)).

Defendant's attempted analogy between banishment and exclusion under the PFZ ordinance is not apt. As the state points out, banishment traditionally meant exclusion from a sovereign's entire territory for life or a significant period of time. The exclusion at issue here, in contrast, pertains for a limited period of time to a limited part of the city's area. In that sense, PFZ exclusions are more like certain restraining orders and injunctions, which are imposed to maintain order within a designated geographical area or to protect specific persons from harassment or physical harm. *See, e.g.*, ORS 163.738 (providing for issuance of stalking protective order by court); ORS 107.718(1)(c) (providing for order, on petition by victim of domestic abuse, restraining abuser from entering "a reasonable area surrounding the petitioner's * * * residence"); *see also Portland Fem. Women's H. Ctr. v. Advocates for Life, Inc.*, 859 F2d 681 (9th Cir 1988) (approving order enjoining right-to-life advocates from entering "free zone" extending along sidewalk to the right and left of abortion clinic's front door). We have found nothing in the case law surrounding those kinds of orders that suggests that they are considered, or historically have been considered, to be criminal punishments.

The analogy to banishment that defendant proposes becomes even more tenuous when one considers that the exclusion ordinance expressly provides for variances to protect the health, welfare, and well-being of the targeted individuals, and even mandates the granting of variances for such persons who reside or work in a PFZ. PCC § 14.150.160(2(b)).[8] By contrast, the historical punishment of banishment stripped offenders of home, citizenship, and livelihood. Because the exclusion ordinance allows offenders to avoid those consequences, we do not deem it comparable.[9]

Defendant suggests that, the analogy to banishment aside, the deprivation of *any* civil right because of past conduct historically has been viewed as punishment for constitutional purposes. He points to the following statement in

---

[8] PCC section 14.150.160(2)(b) provides:

"Variances f[ro]m an exclusion may be granted at any time during the exclusion period by either the Chief of Police or designate or by a social service agency which provides services within the prostitution-free zones for which the variance is granted, only for reasons relating to the health, welfare, or well-being of the person excluded, or for prostitution-related counseling services. Only those service agencies which have written rules and regulations prohibiting prostitution-related activities by their clients and which have entered into a written agreement with the Bureau of Police concerning the applicability and enforceability of those rules are eligible to grant variances. The Chief of Police shall grant a variance to any person who can establish that he or she:

"i. Was a bona fide resident of the prostitution-free zone, other than transient occupancy in a hotel or motel, prior to receipt of the exclusion notice; or

"ii. Was a bona fide owner, principal or employee of a place of lawful employment located in one of the designated prostitution-free zones.

"iii. All variances shall be in writing, for a specific period and only to accommodate a specific purpose, all of which shall be stated on the variance. The person shall keep the variance on his or her person at all times the person is within the prostitution-free zone. In the event a person having a variance is found to be outside the scope of the terms of the variance, the variance shall immediately become void and that person is thereupon subject to arrest for trespass."

[9] Defendant attempts to downplay the significance of the variances by noting that the granting of a "health, welfare or well-being" variance is wholly at the discretion of the Chief of Police or specified social service providers. However, the variances for residence and employment are not discretionary, and the fact that those residence and employment variances are part of the PFZ ordinance is sufficient, in itself, to distinguish Portland's PFZ scheme from the historical punishment of banishment.

*Cummings v. The State of Missouri*, 71 US (4 Wall) 277, 321-22, 18 L Ed 356 (1866):

> "The theory upon which our political institutions rest is, that all men have certain inalienable rights—that among these are life, liberty, and the pursuit of happiness; and that in the pursuit of happiness all avocations, all honors, all positions, are alike open to everyone, and that in the protection of these rights all are equal before the law. Any deprivation or suspension of any of these rights for past conduct is punishment, and can be in no otherwise defined."

The foregoing passage extols the sacred virtue of opportunity; it clearly does not speak to the far more practical question that is at issue here, *viz.*, whether the particular deprivation that is at issue historically has been viewed as a criminal punishment. We are satisfied that it has not.

We also consider under that *Selness* factor whether the sanction in question is such that it cannot be explained in terms of the civil purpose that it supposedly serves. *Selness*, 334 Or at 536. Defendant invokes that factor when he argues that exclusions under the PFZ ordinance far exceed what is necessary, both in terms of geography and affected activities, to achieve the city's legitimate, remedial goals. With regard to geography, defendant points to the trial court's finding that the PFZs follow a number of important thoroughfares and that "it would be extremely difficult to move through substantial portions of the city without at least crossing one of these lineal zones." With regard to activities, defendant argues that exclusion under the ordinance unreasonably and unnecessarily makes legitimate, everyday activities, like commuting to work and driving to the airport, more difficult. Defendant suggests that the PFZs could have been designed to minimize those impacts by, for example, permitting excluded individuals to travel on interstate freeways and major arterial streets.

Defendant also argues that the PFZ scheme is excessive because it is unnecessary, given the legal mechanisms already in place. Defendant notes that the City already prohibits many prostitution-related activities, such as repeatedly circling an area in a motor vehicle and beckoning to

pedestrians and drivers, and that those activity-based prohibitions are appropriate and sufficient. Defendant also suggests that the city could achieve its goals by imposing narrowly tailored exclusions in criminal proceedings against individual defendants who are charged with prostitution crimes, as a condition of release.

Defendant is laboring under a misapprehension with regard to the nature of our inquiry. We never have suggested that a sanction must be "narrowly tailored" to the remedial goals that it serves if it is to avoid classification as criminal punishment. The test that we have proposed is less exacting: It asks only whether the sanction is so excessive that it cannot be justified in terms of the civil purpose that it ostensibly serves. *Selness*, 334 Or at 536.

The exclusion ordinance passes that test. Despite defendant's argument to the contrary, it is evident that the geographical designs of the PFZs are linked closely to the remedial purpose of inhibiting prostitution in areas that have become centers of prostitution activity. Exhibits in the record show that the areas designated as PFZs at the time of defendant's exclusion under the ordinance in fact were experiencing a significantly higher level of prostitution arrests than other parts of the city.[10]

As noted, defendant suggests that the configuration of the PFZs makes exclusion unnecessarily burdensome, in that excluded persons are prohibited from driving on or even crossing through parts of Portland's most important arterial streets. However, given that those major arterials *are* the prostitution centers, and that prostitutes and their clients generally find one another by driving along or through those streets, we cannot say that the City was overreaching when it designed the PFZs in the way that it did.

With respect to defendant's suggestion that the City has other mechanisms in place for preventing prostitution activities in the targeted areas, that argument says nothing

---

[10] Under the express terms of the ordinance, PFZs are areas of the city "where the number of arrests for [prostitution crimes] is significantly higher than for other similarly situated/sized areas of the City." PCC § 14.150.010.

about whether exclusion under the PFZ ordinance is excessive. We reject that argument without further discussion.

Finally, we note that defendant's claims of excessiveness are diminished by the fact and nature of the variances that the ordinance provides. To be sure, exclusion from a portion of the city can be burdensome, depending on the excluded person's individual circumstances. However, if affected individuals are entitled to a variance because they live or work in an exclusion zone and may, at the discretion of designated officials and agencies, obtain additional variances for reasons of health, welfare, or well-being, PCC § 14.150.160(2)(b), then the burdens that accompany exclusion are considerably less than they might be. Although defendant takes great pains to point out that the granting of variances is in part discretionary, we cannot assume that city officials will deny legitimate requests for variances, particularly when the individual who makes the request can show that an exclusion is particularly burdensome.

For the foregoing reasons, we reject defendant's contention that the punitive effects of exclusion under the PFZ ordinance are so excessive, in relation to the remedial purpose that exclusion serves, that exclusion should be deemed a criminal sanction and the exclusion process a criminal prosecution for purposes of Article I, section 12.

3. *Stigmatizing Significance*

Some level of public stigma may attach to an exclusion under Portland's PFZ ordinance. We must determine, however, whether that public stigma is stigma of the individual, and not simply public disapproval of the behavior. *See Selness*, 334 Or at 534 (setting the standard).

We are persuaded that the stigma associated with exclusion under the PFZ ordinance is no more stigmatizing of the individual involved than domestic abuse restraining orders, ORS 107.718(1)(c), and other similar civil orders aimed at preventing violence and disorder, rather than at punishing past crimes. *See, e.g., Portland Fem. Women's H. Ctr.*, 859 F2d at 681-85 (approving order enjoining right-to-life advocates from entering area around abortion clinic's front door).

### 4. *Collateral Consequences*

The last of the four factors we have identified as relevant in this context—whether any collateral consequences that attach to the proceeding have attributes of a criminal sanction—does not appear to be relevant in this case. Defendant has not argued that any collateral consequences attach and none otherwise have come to our attention.

### D. *Conclusion*

■ We have considered the exclusion ordinance in light of the four factors identified in *Selness*. We have found nothing in the course of that analysis that conflicts with the Portland City Council's clear intent to create a civil, remedial process and sanction. Consequently, we hold that exclusion under PCC section 14.150.030 is not a criminal sanction or process and, therefore, does not constitute former jeopardy under Article I, section 12, of the Oregon Constitution.

## II. DOUBLE JEOPARDY UNDER THE FIFTH AMENDMENT TO THE UNITED STATES CONSTITUTION

### A. *The Federal Double Jeopardy Analysis*

■ We next consider whether exclusion under the ordinance is jeopardy under the Fifth Amendment to the United States Constitution.[11] The federal double jeopardy analysis is similar, but not identical, to the one that we have applied for purposes of Oregon's former jeopardy prohibition. Under the federal analysis, the reviewing court first asks whether the legislating body, in enacting the statutory scheme, indicated an intent to create either a civil or criminal sanction. *See United States v. Hudson*, 522 US at 99 (so stating). Then, if that inquiry reveals that the legislating body intended to create a civil sanction, the reviewing court considers whether the scheme is "so punitive either in purpose or effect * * * as to transform what was clearly intended as a civil remedy into a criminal penalty." *Id.* (citations omitted). In making that latter determination, courts have been instructed to consider the following seven factors:

---

[11] The relevant wording of the Fifth Amendment to the United States Constitution provides: "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb."

"(1) '[w]hether the sanction involves an affirmative disability or restraint'; (2) 'whether it has historically been regarded as punishment'; (3) 'whether it comes into play only on a finding of *scienter*'; (4) 'whether its operation will promote the traditional aims of punishment—retribution and deterrence'; (5) 'whether the behavior to which it applies is already a crime'; (6) 'whether an alternative purpose to which it may rationally be connected is assignable for it'; and (7) 'whether it appears excessive in relation to the alternative purpose assigned.' "

*Hudson*, 522 US at 99-100 (quoting *Kennedy v. Mendoza-Martinez*, 372 US at 168-69). Reviewing courts are reminded, moreover, that "only the clearest proof will suffice to override legislative intent and transform what has been denominated a civil remedy into a criminal penalty." *Hudson*, 522 US at 100. *See also United States v. Ursery*, 518 US 267, 290, 135 L Ed 2d 549, 116 S Ct 2135 (1996) (stating "clearest proof" standard).

## B. *Applying the Federal Double Jeopardy Analysis*

We already have identified a clear intent on the part of the body that adopted the PFZ scheme to create a civil, rather than a criminal, sanction. We thus turn to the seven factors that the federal cases identify as relevant.

### 1. *Affirmative Disability or Restraint*

The exact boundaries of the first factor in the federal analysis—whether the sanction involves an "affirmative disability or restraint"—never have been clarified. Although more recent United States Supreme Court decisions appear to suggest that nothing short of imprisonment would qualify as an affirmative disability or restraint,[12] earlier authorities suggest that the term encompasses a broader range of restraints, including permanent exclusion from a vocation,

---

[12] In *Hudson*, for example, the United States Supreme Court held that being barred from the banking profession

"do[es] not involve an 'affirmative disability or restraint,' as that term is normally understood. While petitioners have been prohibited from further participating in the banking industry, this is 'certainly nothing approaching the "infamous punishment" of imprisonment.' "

522 US at 104 (quoting *Flemming v. Nestor*, 363 US 603, 617, 4 L Ed 2d 1435, 80 S Ct 1367 (1960)).

but not denial of a noncontractual government benefit. *See, e.g., Mendoza-Martinez,* 372 US at 168 n 22 (suggesting that deportation of, and denial of passports to, draft evaders amount to "affirmative restraints," and citing *Flemming v. Nestor,* 363 US 603, 80 S Ct 1367, 4 L Ed 2d 1435 (1960) (termination of social security benefits), *United States v. Lovett,* 328 US 303, 66 S Ct 1073, 90 L Ed 1252 (1946) (statute prohibiting payment of salary or compensation to named government employees), and *Ex parte Garland,* 71 US (4 Wall) 333, 18 L Ed 366 (1867) (exclusion from practice of law)). At the very least, the factor appears to refer to some kind of serious impingement on personal liberty.

Although exclusion from a part of a city is some restraint on personal liberty, we are persuaded that exclusions under the ordinance are not serious enough to qualify as "affirmative restraints." We reach that conclusion for a number of reasons. First, the exclusions are temporary—90 days in duration. Second, they are geographically limited, *i.e.,* they pertain to a relatively small portion of the city. Finally, they are open to variance: Under the ordinance, the City *must* grant a variance request to a person who works or lives within a PFZ and *may* grant a variance for other reasons relating to the health, welfare, or well-being of the excluded person. PCC § 14.150.160(2)(b). We hold that exclusion under Portland's PFZ ordinance is not an "affirmative restraint," as that concept is used in the federal cases.

### 2. *Historical View of Sanction*

As noted above, defendant argues that exclusion under the PFZ ordinance is the equivalent of banishment, a sanction that, by long tradition, is criminal punishment. We have responded to that argument at length in our analysis of defendant's former jeopardy claim under Article I, section 12, of the Oregon Constitution. We reject the argument here for the same reasons that we rejected it in that context.

### 3. *Scienter*

The third of the seven factors asks whether imposition of the sanction at issue is dependent on a finding of scienter. It seems clear that, with respect to exclusion under the PFZ ordinance, the answer is "yes": Under that ordinance, if

a person challenges an exclusion notice, the exclusion will be sustained only if the state proves, by a preponderance of the evidence, that the person committed one of the prostitution-related crimes listed in PCC section 14.150.030, all of which require some proof of intent. PCC § 14.150.160(1)(c).

The question remains whether that fact alone marks the PFZ scheme as a criminal proceeding. Ultimately, we are persuaded that it does not. Although it is true that some level of intent is required before an actor may be held criminally liable, a scienter requirement is not necessarily inconsistent with liability under some civil, remedial scheme. Here, the scienter requirement is part of a larger requirement that the exclusions be directed at persons who have committed the specified criminal acts. But exclusion is not imposed to punish those crimes. Rather, it seeks to prevent further crime by keeping persons who have been identified either as probable prostitutes or their customers away from their customary marketplaces. In that respect, the ordinance is remedial and, unless there is some prohibition against applying both civil and criminal consequences to the same act (and the United States Supreme Court has indicated that there is not, *Helvering v. Mitchell*, 303 US 391, 399, 82 L Ed 917, 58 S Ct 630 (1938)), we cannot accept the mere fact that the ordinance contains a scienter requirement as a clear indication that the scheme is criminal in nature.

4. *Is the Behavior Targeted by the Proceeding Already a Crime?*

Despite its persistent inclusion in the list of factors to be considered at the second stage of the analysis, it is clear that the United States Supreme Court considers the fact that the targeted conduct already is a crime to be all but irrelevant. *See Ursery*, 518 US at 292 (fact that forfeiture statutes are tied to criminal activity insufficient to render statutes punitive); *see also Helvering*, 303 US at 399 ("Congress may impose both a criminal and a civil sanction in respect to the same act or omission"). We give that factor little weight.

5. *Does the Sanction Serve a Punitive Purpose?*

Defendant argues that the PFZ exclusion ordinance serves a punitive purpose, because it seeks to incapacitate

individuals from committing future crimes. Defendant also argues that the PFZ ordinance serves the punitive goal of retribution, "because it goes far beyond what is necessary for any remedial purpose." Finally, defendant argues that the ordinance is intended to be a deterrent to further criminal conduct and is therefore punitive in that respect.

■ Even if defendant were correct that exclusion serves as a deterrent, that fact is of little value to our analysis. Deterrence is a legitimate remedial purpose and its presence is perfectly compatible with a conclusion that a proceeding and sanction is civil. *See Hudson*, 522 US at 105 (stating that deterrence may serve both civil and criminal goals). The same can be said of defendant's contention that exclusion under the ordinance serves to incapacitate persons from committing further crimes. Incapacitation, in that sense, is a remedial goal.

Defendant does not suggest that that PFZ ordinance states a retributive purpose, and does not offer evidence— assuming such evidence would be pertinent—that the City Council had a hidden retributive agenda when it enacted the ordinance. As to defendant's contention that exclusion is retributive because it "goes far beyond what is necessary for any remedial purpose," that argument properly belongs under the seventh factor in the federal test, *i.e.*, whether the sanction is "excessive in relation to the alternative purpose assigned," and we shall consider it under that topic. In summary, we do not find that the PFZ ordinance is punitive, as opposed to remedial.

## 6. *Does the Sanction Serve a Civil Purpose?*

■ Defendant concedes that exclusion under PCC section 14.150.030 serves the remedial purpose of improving quality of life in areas that have become notorious for their high level of prostitution activity. In addition to that conceded purpose, it is clear from the record that the exclusion serves an even more basic remedial purpose—that of preventing prostitution activity by keeping prostitutes and their customers out of areas that have evolved into marketplaces for such activities.

### 7. *Is the Sanction Excessive?*

We already have considered, and rejected, defendant's argument that exclusion under the PFZ ordinance is excessive in relation to its remedial purposes, in the context of our analysis under the state constitution's former jeopardy provision.

## C. *Conclusion*

We have applied all the factors that are mentioned in the federal double jeopardy cases to Portland's PFZ ordinance. Our analysis of those factors does not persuade us by the required "clearest proof" standard that the Portland City Council failed in its effort to create a remedial process and sanction. Exclusion under the PFZ ordinance is neither criminal punishment nor jeopardy for purposes of the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution.

The decision of the Court of Appeals is affirmed. The judgment of the district court is reversed, and the case is remanded to the circuit court for further proceedings.