Submitted February 27, affirmed May 14, 2008

## STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

## LAURA ELISABETH JENSON,
*Defendant-Appellant.*

Lane County Circuit Court
210508782; A130780

184 P3d 1194

Peter Gartlan, Chief Defender, Legal Services Division, and Marc D. Brown, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Hardy Myers, Attorney General, Mary H. Williams, Solicitor General, and Laura S. Anderson, Senior Assistant Attorney General, filed the brief for respondent.

Before Brewer, Chief Judge, and Schuman, Judge, and Deits, Judge pro tempore.

BREWER, C. J.

**BREWER, C. J.**

Defendant appeals a judgment of conviction for misdemeanor driving under the influence of intoxicants (DUII). ORS 813.010. She assigns error to the trial court's denial of her motion to dismiss the DUII charge on former jeopardy grounds. We affirm.

The facts in this case are largely procedural. Late in the evening, a police officer saw defendant's vehicle exceed the posted speed limit, change lanes without signaling, and make an improper turn. The officer stopped the vehicle and, while questioning defendant about the traffic infractions, smelled burnt marijuana coming from inside the vehicle. The officer observed visual signs that defendant was intoxicated. The officer had defendant perform field sobriety tests, determined that she could not safely drive, and arrested her for DUII. The officer then searched the vehicle incident to defendant's arrest and found and confiscated a small bag containing less than an ounce of marijuana. The officer also cited defendant for a traffic violation, failure to properly signal a turn, and for the violation of possession of less than an ounce of marijuana. ORS 475.864(3).

Defendant's citation required her to appear before the court on a date certain. Defendant appeared on that date and pleaded not guilty, and the court set the violations for trial. However, defendant failed to appear on the designated trial date, and the trial court entered a default judgment on both violations; the court imposed a $90 fine for the traffic violation and a fine of $904 for the marijuana violation.

A few weeks later, the state charged defendant by information with misdemeanor DUII based on the same incident. Before trial, defendant filed a motion to dismiss the charge, asserting that the prosecution was barred on former jeopardy grounds under Article I, section 12, of the Oregon Constitution, because the state previously had obtained a default judgment against defendant for the marijuana possession violation. The trial court denied the motion, and a jury convicted defendant of the DUII charge. On appeal, defendant renews her argument that the DUII prosecution was barred by former jeopardy.

The question is whether the proceeding on the charge of possession of less than an ounce of marijuana, ORS 475.864(3), is the type of proceeding that implicates the former jeopardy provision of Article I, section 12. In making that determination, we apply the analysis described in *State v. Selness/Miller*, 334 Or 515, 54 P3d 1025 (2002). The threshold question is "whether the legislature intended to create a civil proceeding." *Id.* at 536. If so, then the question becomes whether, despite the legislature's intent, the ostensibly civil proceeding is, nonetheless, criminal in nature for purposes of Article I, section 12. *Id.* To make that determination, the court examines four factors:

"(1) [T]he use of pretrial procedures that are associated with the criminal law, such as indictment, arrest, and detention; (2) the potential for imposition of a penalty that is historically criminal or 'infamous,' or that cannot be justified fully in terms of the civil purposes that the penalty supposedly serves; and (3) the potential for a judgment or penalty that carries public stigma; (4) the potential for collateral consequences that, either taken by themselves or added to the direct consequences of the underlying forbidden acts, amount to criminal penalties."

*Id.*

In *Selness/Miller*, the court considered whether charges concerning possession, manufacture, and delivery of a controlled substance were properly dismissed pursuant to Article I, section 12, because of a prior civil forfeiture proceeding that resulted in the forfeiture of the defendants' home in which they had approximately $60,000 in equity. *Id.* at 518-19. As to the threshold question, the court noted that the legislature had clearly indicated that it intended such forfeiture to be "civil forfeiture" and that the remedy provided in the statute was "intended to be remedial and not punitive." *Id.* at 536 (citation and internal quotation marks omitted). The court then turned to the four enumerated factors.

As to the first factor, "pretrial procedures," the court noted that the forfeiture laws did "not provide for the arrest and detention of property owners, or for any other procedure with similar criminal consequences for the property owners." *Id.* at 537. Regarding the second factor, the court simply

noted that forfeiture of property was not an "infamous" penalty. *Id.* at 537-38. The court added that the amount of the penalty was not inconsistent with, or excessive in relation to, the remedial purposes of the law, "*e.g.*, to render drug manufacture and trafficking activities unprofitable by confiscating the proceeds, to render those activities more difficult by confiscating tools and other property that facilitate the activities, and to provide resources to governments that enforce drug trafficking laws." *Id.* at 538.

With respect to the third factor, "public stigma," the court concluded that, although "[t]here may be some vague public condemnation associated with the forfeiture of a home," that same "vague public condemnation" attends "foreclosures or proceedings to abate a nuisance," which "are indisputably civil." *Id.* at 539. Finally, as to collateral consequences, which the court identified as "forced relocation and economic devastation," the court described those as "peculiar to these defendants," noting that they had not participated in the forfeiture proceeding and thus had not requested a mitigation hearing. *Id.* In sum, the court found "nothing" in the forfeiture law that "negates the legislature's intent to provide a civil procedure and sanction." *Id.* at 540.

In *State v. Warner*, 342 Or 361, 153 P3d 674 (2007), the Supreme Court applied the *Selness / Miller* test to determine whether careless driving is a crime under Oregon law. The court initially observed that the careless driving statute did not assist the defendant, because the legislature designated the offense as a traffic violation; because a citing officer could not arrest a person for that violation and could detain the person only so long as necessary to investigate the violation, ORS 810.410(3)(a) and (b); and because the violation is punishable only by a fine, not by imprisonment, ORS 153.018. *Warner*, 342 Or at 372.

The court then applied the *Selness / Miller* factors to that statutory framework. With respect to the first factor, the defendant argued that a careless driving proceeding involves pretrial procedures associated with the criminal law in that a person suspected of careless driving may be stopped, detained, and subjected to inquiries regarding criminal activity, officer safety, and other matters. ORS 810.410(3)(a) - (e).

The defendant further noted that a police officer may use a degree of force reasonably necessary to make the stop and to ensure the safety of all persons present. ORS 810.410(3)(f). The court rejected that argument, observing that

> "the key provisions in ORS 810.410 provide that an officer may not arrest a person for a traffic violation and that the interlude of detention when a person is stopped must be no longer than necessary to investigate the violation, assure the driver's identity, and issue the citation. * * * None of those provisions makes the process criminal, in constitutional terms."

*Warner*, 342 Or at 373. As to the second factor, the defendant suggested that the potential penalties that careless driving carried at the relevant time—a $300 fine, suspension of driving privileges, and required participation in driver education and other rehabilitative programs, are hallmarks of a criminal prosecution. The court was unpersuaded for three reasons. First, the fine was a small one—"inconvenient to pay, but far less so than potential penalties for such things as expanding one's garage without a building permit." *Id.* at 374. Second, the suspension that concerned the defendant could occur only if he failed to appear—"a matter entirely within his control. It is *not* a consequence of the violation." *Id.* (emphasis in original). Finally, the court noted that participation in driver improvement programs is remedial—designed to protect both the public and the defendant. *Id.*

The defendant next suggested that the third *Selness/Miller* factor—"public stigma"—weighed in his favor, because careless driving addresses the same harm as the crime of reckless driving and necessarily has the same stigmatizing effect. The court summarily dismissed that argument, concluding that "there is no potential stigma that might accompany a careless driving prosecution, unless such a stigma applies to every issuance of a traffic ticket." *Warner*, 342 Or at 374. Finally, the defendant argued that careless driving proceedings carry a potential for collateral consequences that amount to criminal penalties in and of themselves. He pointed to the fact that a defendant may be charged with a crime for failing to appear in the proceeding, ORS 153.992, and ultimately may be arrested for such failure to appear, ORS 153.064. The defendant also noted that a

careless driving conviction becomes part of the offender's driving record and may affect his or her insurance rates and ability to obtain a job that involves driving. Again, the court was unpersuaded: "The first two 'consequences' that defendant identifies are inapposite—they do not flow from the careless driving offense but from an additional and altogether different act. As to the latter consequences, they are remedial, and not punitive, in nature." *Warner*, 342 Or at 374-75. The court ultimately concluded that "the reality of a careless driving proceeding exactly matches its label. The offense is a violation, not a crime, and conviction on a charge of careless driving does not amount to 'jeopardy' for purposes of Article I, section 12, of the Oregon Constitution." *Id.* at 375.

■      As we now explain, much of defendant's argument in this case founders on the court's analysis in *Warner*. We begin with the pertinent statutory framework. ORS 475.864 provides:

"(1)   It is unlawful for any person knowingly or intentionally to possess marijuana.

"(2)   Unlawful possession of marijuana is a Class B felony.

"(3)   Notwithstanding subsection (2) of this section, unlawful possession of marijuana is a violation if the amount possessed is less than one avoirdupois ounce of the dried leaves, stems and flowers of the plant Cannabis family Moraceae. A violation under this subsection is punishable by a fine of not less than $500 and not more than $1,000. Fines collected under this subsection shall be forwarded to the Department of Revenue for deposit in the Criminal Fine and Assessment Account established under ORS 137.300.

"(4)   Notwithstanding subsections (2) and (3) of this section, unlawful possession of marijuana is a Class C misdemeanor if the amount possessed is less than one avoirdupois ounce of the dried leaves, stems and flowers of the plant Cannabis family Moraceae and the possession takes place in a public place, as defined in ORS 161.015, that is within 1,000 feet of the real property comprising a public or private elementary, secondary or career school attended primarily by minors."

As with the statute in *Warner*, an offense under subsection (3) of the statute here is described as a violation, not a crime, and it is punishable only by a fine, not by imprisonment. Thus, on its face, the statute does not support defendant's argument.

Nor do the *Selness / Miller* factors assist defendant. As to the first factor, defendant argues that, although a person may not be arrested for a violation, "she may be stopped, detained, and she is subject to inquiries regarding criminal activity." But the court in *Warner* rejected a similar argument. The period of detention when a person is stopped for a nontraffic violation must be no longer than necessary to investigate the violation, assure the person's identity, and issue the citation. ORS 153.039(3). None of those provisions makes the process criminal, in constitutional terms. *Warner*, 342 Or at 373.

The second factor for consideration is the potential penalty. A nominally civil offense is nonetheless criminal in nature if it has "the potential for imposition of a penalty that is historically criminal or 'infamous,' or that cannot be justified fully in terms of the civil purposes that the penalty supposedly serves[.]" *Selness / Miller*, 334 Or at 536. In *State v. Lhasawa*, 334 Or 543, 55 P3d 477 (2002), the court rejected the defendant's proposition that a sanction would need to be "narrowly tailored" to its remedial goal—and, instead, emphasized that the test is "less exacting," that is, "whether the sanction is so excessive that it cannot be justified in terms of the civil purpose that it ostensibly serves." *Id.* at 554. In support of his argument respecting the second factor, defendant merely notes, without elaboration, that the maximum penalty for possession of less than an ounce of marijuana is a $1,000 fine. ORS 475.864(3). But, defendant could not be imprisoned, and the possible fine does not indicate a legislative intention to give it punitive significance. *See Warner*, 342 Or at 374 ($300 fine for careless driving is "inconvenient to pay, but far less so than potential penalties for such things as expanding one's garage without a building permit"); *State v. Roeder*, 209 Or App 199, 209, 147 P3d 363, *rev den*, 342 Or 474 (2007) ($1,000 maximum fine for refusing to take a breath test justified by cost of enforcing DUII laws). Although defendant does not call attention to the point, we observe

that fines imposed under ORS 475.864(3) must be "forwarded to the Department of Revenue for deposit in the Criminal Fine and Assessment Account established under ORS 137.300."[1] At first blush, that designation might appear to suggest that the fine has a punitive character. However, at least three of the four purposes for which the fund is dedicated are limited to defraying costs of enforcing the law; the fourth purpose, set out in paragraph (2)(b), involves victim compensation. A fine that defrays costs of enforcing the law does not necessarily import a punitive intent. *Roeder,* 209 Or App at 209. Moreover, a "compensatory" fine is a surrogate for damages that a victim could recover in a *civil* action. ORS 137.101(1).

■　　　In addition, deterrence is a legitimate remedial purpose and "its presence is perfectly compatible with a conclusion that a proceeding and sanction is civil." *Lhasawa,* 334 Or at 560. The potential $1,000 fine is not so excessive that it cannot be justified in terms of the civil purpose of deterring the use of illegal drugs. *See, e.g.,* ORS 135.907 (providing for diversion in lieu of prosecution for the offense of possession of less than an ounce of marijuana where, among other conditions, the defendant agrees to undergo diagnosis and treatment as appropriate). In short, the $1,000 maximum fine under ORS 475.864(3) is not such a severe penalty as to transform the violation into a criminal prosecution for former jeopardy purposes.

The third criterion—"public stigma" or "punitive significance"—is intended to capture a degree of reproach "more stigmatizing of the individual involved than domestic abuse restraining orders, ORS 107.718(1)(c), and other similar civil orders aimed at preventing violence and disorder, rather

---

[1] ORS 137.300(2) provides:

"The Legislative Assembly shall allocate moneys in the account according to the following priority:

"(a) Public safety standards, training and facilities;

"(b) Criminal injuries compensation and assistance to victims of crime and children reasonably suspected of being victims of crime;

"(c) Forensic services of the Oregon State Police including, but not limited to, services of the State Medical Examiner; and

"(d) Maintenance and operation of the Law Enforcement Data System."

than at punishing past crimes," *Lhasawa*, 334 Or at 555, and more stigmatizing than "vague public disapproval," *Selness/ Miller*, 334 Or at 533-34. An adjudication for possession of less than an ounce of marijuana is no more stigmatizing than an adjudication for a civil domestic abuse restraining order.[2] Moreover, conviction of such a violation results in no "disability or legal disadvantage based on conviction of a crime." ORS 153.008(2). Accordingly, the third factor does not support defendant's argument.

The fourth and final factor involves whether there are collateral consequences to the adjudication that have attributes of a criminal sanction. Defendant argues that the risk that a defendant who fails to make a first appearance or respond to a show cause order under either ORS 153.992 or ORS 153.064 could be subject to misdemeanor treatment is such a collateral consequence. We disagree. As the Supreme Court held in *Warner*, collateral consequences for former jeopardy purposes "do not flow from the [violation] offense but from an additional and altogether different act." *Warner*, 342 Or at 374-75. Thus, the final *Selness/Miller* factor does not militate in favor of deeming the prior proceeding on the citation for violation of ORS 475.864(3) "criminal in nature" for purposes of Article I, section 12.

The trial court did not err in denying defendant's motion to dismiss the DUII charge on former jeopardy grounds.

Affirmed.

---

[2] In fact, Oregon voters have, in restricted circumstances, made marijuana use legal for medical purposes. *See, e.g.*, ORS 475.300(1) (providing that "[p]atients and doctors have found marijuana to be an effective treatment for suffering caused by debilitating medical conditions, and therefore, marijuana should be treated like other medicines").