[No. D053979. Fourth Dist., Div. One. May 27, 2009.]

ALEX O., Petitioner, v.
THE SUPERIOR COURT OF SAN DIEGO COUNTY, JUVENILE
DIVISION, Respondent;
THE PEOPLE, Real Party in Interest.

## Counsel

Steven J. Carroll, County Public Defender, and Jo Pastore, Deputy Public Defender, for Petitioner.

No appearance for Respondent.

Edmund G. Brown, Jr., Attorney General, and Marissa Bejarano, Deputy Attorney General, for Real Party in Interest.

## Opinion

**BENKE, Acting P. J.**—In this extraordinary proceeding, a juvenile, who is a United States citizen, lives with his mother in Mexico and admitted smuggling marijuana into the United States. As a condition of probation, the juvenile court ordered that the juvenile not enter the United States except to attend school, work, or visit his family. In addition, the juvenile was ordered to notify his probation officer before he enters the country.

In large measure the conditions imposed on the juvenile are not valid. The court could not expressly banish the juvenile from the United States. Such an express condition would plainly be overbroad and not reasonably related to the juvenile's underlying smuggling offense. For the same reasons the juvenile court could not impose limits on the purposes for which the juvenile could enter the United States, which limits, taken together with the juvenile's living arrangements, effectively banished the juvenile from the United States. However, because any border crossing by the juvenile is closely related to the juvenile's underlying smuggling offense, the court could reasonably require that the juvenile give his probation officer notice of when he enters the United States so that the probation officer could take steps to make certain the juvenile does not engage in further smuggling.

## FACTUAL AND PROCEDURAL BACKGROUND

Alex O. is a United States citizen. On August 19, 2008, 17-year-old Alex attempted to enter the United States from Mexico at the San Ysidro port of entry. He handed a customs and border patrol officer his identification card, and stated he had been in Mexico to see his mother who lives there. Upon noticing Alex was wearing two oversized shirts, the officer escorted him to the supervisor's office where Alex consented to a search. The officer discovered four packages taped to the front and back of Alex's legs. The packages contained 2.2 kilograms of marijuana. Alex told the officer he bought four pounds of marijuana for $400 in Mexico. He said he was going to take the marijuana to a relative's home, conceal it, and use it during the next few months.

On September 9, while at the East Mesa Juvenile Detention Facility, Alex agreed to be interviewed. He reported a friend offered to pay him $400 to transport marijuana across the border. Although he knew it was illegal, he explained he accepted the job because his mother was having difficulty paying the rent and buying other necessities and his father does not give his mother enough money to support the family. He admitted he taped the packages of marijuana to his legs and took a taxi to the border, carrying a cellular telephone to contact his friend after he crossed the border.

Before his arrest, Alex lived in Mexico with his mother, who is undocumented and cannot enter the United States. Alex had been living with his mother in Mexico for approximately three and a half years. He has a very good relationship with his mother. Conversely, Alex's father lives in Rialto; Alex has never lived with his father and he has a poor relationship with him. At the time of his arrest, Alex was not enrolled in school nor gainfully employed. He reported he helped his uncle with his landscaping business, but was paid very little money. Alex admitted to transporting marijuana across the border in exchange for payment of $400. He agreed to the illegal act because his mother was having financial difficulties and his father does not give his mother enough money to support the family.

Alex admitted possessing marijuana for sale. The court declared Alex a ward on September 17, 2008, committed him to Camp Barrett for 365 days and stayed the commitment. In apparent response to our holding in *In re James C.* (2008) 165 Cal.App.4th 1198, 1203 [81 Cal.Rptr.3d 846] (*James C.*), in which we held that the juvenile court could not simply banish a juvenile United States citizen to Mexico where he lived with his grandparents, the juvenile court instead placed Alex on probation on the condition Alex return to his mother's residence in Tijuana, Mexico, and not enter the United States except to attend school, meet with his probation officer, complete the terms of

probation, seek or maintain employment, or visit his father and family members. The court further ordered Alex to advise his probation officer, in advance, when he is going to cross the border.

Alex filed this petition, arguing the court abused its discretion by imposing probation conditions restricting his entry into the United States. Alex asserts (1) the probation conditions are unreasonable because they are not reasonably related to the crime he committed or to future criminality; and (2) the probation conditions are unconstitutional because they are not narrowly tailored to serve the rehabilitative goals of probation. We issued an order to show cause.

## DISCUSSION

### I

■ We review a juvenile court's imposition of a probation condition for an abuse of discretion. (*People v. Carabajal* (1995) 10 Cal.4th 1114, 1121 [43 Cal.Rptr.2d 681, 899 P.2d 67].) As we noted in *In re Christopher M.* (2005) 127 Cal.App.4th 684, 692–693 [26 Cal.Rptr.3d 61]: "The juvenile court is statutorily authorized to place a ward on probation and 'impose and require any and all reasonable conditions that it may determine fitting and proper to the end that justice may be done and the reformation and rehabilitation of the ward enhanced.' [Citation.] [Welfare and Institutions Code] [s]ection 730 grants courts broad discretion in establishing conditions of probation in juvenile cases. [Citation.] '[T]he power of the juvenile court is even broader than that of a criminal court.' [Citation.] The juvenile court's exercise of discretion in establishing conditions of probation in juvenile cases 'will not be disturbed in the absence of manifest abuse.' [Citation.] [¶] A juvenile probation condition is generally valid unless it ' "(1) has no relationship to the crime of which the offender was convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality." ' [Citations.] [¶] As explained in *In re Antonio R.* (2000) 78 Cal.App.4th 937, 941 [93 Cal.Rptr.2d 212], 'juvenile conditions may be broader than those pertaining to adult offenders. This is because juveniles are deemed to be more in need of guidance and supervision than adults, and because a minor's constitutional rights are more circumscribed. The state, when it asserts jurisdiction over a minor, stands in the shoes of the parents. And a parent may "curtail a child's exercise of the constitutional rights . . . [because a] parent's own constitutionally protected 'liberty' includes the right to 'bring up children' [citation,] and to 'direct the upbringing and education of children.' [Citation.]" [Citations.]' The *Antonio R.* court further explained that even conditions infringing on constitutional rights may not be invalid if they are specifically tailored to fit the needs of the

juvenile. [Citation.] In planning the conditions of a juvenile probationer's supervision, the juvenile court must consider both the circumstances of the crime and the juvenile's entire social history. [Citation.]" (*In re Christopher M., supra,* 127 Cal.App.4th at pp. 692–693, italics and fn. omitted.)

Nonetheless, as we recently noted in *James C.,* "regardless of the juvenile court's broad discretion to impose probation conditions, its authority to do so is not without bounds." (*James C., supra,* 165 Cal.App.4th at p. 1203.) In *James C.* the juvenile, like Alex, was a United States citizen living in Tijuana, Mexico. The juvenile attempted to drive a stolen car across the border with undocumented aliens in it and was arrested at the San Ysidro port of entry. As in Alex's case, the juvenile court committed the juvenile to Camp Barrett for 365 days and stayed the commitment. As a condition of probation, the juvenile court ordered that the juvenile return to his grandparents' home in Tijuana, Mexico, and not return to the United States during the term of his probation. On appeal we reversed.

We found that the banishment condition was unreasonable because it was not related to the crime the juvenile committed or future criminality. "James had no criminal history and no history of involvement with alcohol, drugs or gangs. He was not a high risk to reoffend. Prohibiting James from entering the United States was not reasonably related to his crime of receiving a stolen vehicle or to future criminality. The probation condition did not have a rehabilitative purpose." (*James C., supra,* 165 Cal.App.4th at p. 1203.)

■ In *James C.* we also found the banishment condition was unconstitutional. In doing so, we considered a number of cases that invalidated broad geographical limitations on probationers' right to travel. (See *In re Babak S.* (1993) 18 Cal.App.4th 1077, 1085 [22 Cal.Rptr.2d 893]; *In re White* (1979) 97 Cal.App.3d 141, 143–144 [158 Cal.Rptr. 562]; *People v. Bauer* (1989) 211 Cal.App.3d 937, 940 [260 Cal.Rptr. 62]; *Alhusainy v. Superior Court* (2006) 143 Cal.App.4th 385, 390–392 [48 Cal.Rptr.3d 914].) "Conditions of banishment affect the probationer's basic constitutional rights of freedom of travel, association and assembly. [Citations.] Thus, in order to survive constitutional scrutiny, such conditions not only must be reasonably related to present or future criminality, but also must be narrowly drawn and specifically tailored to the individual probationer." (*In re Babak S., supra,* 18 Cal.App.4th at p. 1084.) In *James C.* we found the banishment of the juvenile from the United States was neither narrowly drawn or specifically tailored to the juvenile's circumstances and hence was unconstitutional. (*James C., supra,* 165 Cal.App.4th at p. 1205.)

Although the result in *In re Antonio R., supra,* 78 Cal.App.4th at pages 941–942, is different from the result we reached in *James C.,* the two cases

are consistent. In *In re Antonio R.*, the juvenile, a resident of Orange County, had an extensive criminal history, which involved his association with a criminal gang located in Los Angeles County. Previous efforts at rehabilitation, including prior commitments to juvenile programs had failed to rehabilitate the juvenile. Thus as a condition of probation following commission of yet more crimes in Los Angeles, the court required that the juvenile stay out of Los Angeles County unless accompanied by a parent or with prior permission from the probation officer. In finding that this limitation on the juvenile's travel met constitutional muster, the court stated: "Antonio has been involved in extensive and recent criminal conduct in Los Angeles County. . . . His gang holds court in at least a portion of that county, and it is readily inferable that his criminal behavior is related to his associations. His parents and residence are in Orange County, which distinguishes this case from those cited above where the probationers were effectively banished from their homes." (*Id.* at pp. 941–942, citation omitted.) Importantly, the court noted that the ban on travel was not absolute: "[W]e have confidence that any reasonable request to travel within Los Angeles County will be honored by his parents or the probation officer, and this safety valve saves the condition. In essence, the minor may not travel 'extra-locally' without his parents' cooperation or his probation officer's assent. This does no more than reaffirm the traditional parental prerogative." (*Id.* at p. 942.) Unlike the record in *In re Antonio R.*, in *James C.* there was no lengthy criminal history or failed rehabilitation efforts which justified the extraordinary intrusion on the juvenile's right to travel and freely associate.

## II

As we have indicated, the probation conditions imposed by the juvenile court prevent Alex from entering the United States except to attend school, meet with his probation officer, complete the terms of his probation, seek or maintain employment, and visit his father and family members. He is also required to notify his probation officer in advance when he is going to cross the border.

Given Alex's current social circumstances, it is not likely that any of the circumstances under which he is authorized to travel to the United States will arise during the course of his probation. He lives with his mother in Tijuana, does not attend school there or in the United States, is not working, does not appear to have any family proximate to the border and does not have a good relationship with his father. Thus the school, work and family exceptions to the travel ban are not likely to occur. Moreover, as Alex points out in his petition, although he is a United States citizen, under the juvenile court's order he may not travel to the United States to go to the beach, to the zoo, to Balboa Park or to a movie. Indeed, under the trial court's order there is no

place in the *entire* United States he may travel except for the limited purposes set forth in the juvenile court's order. In short, although the juvenile court's order is not an express banishment from the United States, its practical effect on Alex is almost indistinguishable from a banishment.

As in *James C.*, the substantive limitations on travel to the United States are not closely related to either the crime Alex committed or the risk of future criminality. The crime Alex committed commenced in Tijuana and ended at the port of entry. There is little if any indication that Alex's ability to travel freely once inside this country is closely related to his smuggling activity. Most importantly, there is nothing in the record that suggests he has a lengthy criminal history or that previous rehabilitation efforts have failed. Plainly, if the record disclosed a criminal history similar to the one considered by the court in *In re Antonio R.*, a very substantial limitation on Alex's ability to travel might be fully warranted, especially if it were associated with a particular geographic part of the country. Here, however, there is no such record.

■ The lack of a direct relationship between the substantive limitations and Alex's crime make those limitations unreasonable. For very similar reasons, the limitations are also unconstitutional. The limitations are not narrowly drawn: as we have seen, they cover the entire United States. Moreover, the substantive limitations are not tailored to Alex's social situation. As we have found, given Alex's living situation and his unfortunate relationship with his father, the exceptions to the travel ban permitted by the juvenile court are not likely to arise very often, if at all.

The one condition that is reasonable and does meet constitutional muster is the requirement that Alex notify his probation officer before he enters the United States. Plainly, it is Alex's United States citizenship and absolute right to enter the country that made him vulnerable to a smuggling operator in Tijuana and will make him vulnerable in the future. With advance notice, the probation office can alert immigration authorities at the border and prevent any further smuggling attempts. Importantly, the notice requirement poses no substantial burden on Alex. He may come to this country when he wishes for any lawful purpose, so long as he takes the relatively simple step of giving his probation officer notice of his plans. In short, the notice requirement is related to Alex's criminal history and future criminality and is both narrowly drawn and tailored to Alex's circumstances and record.

## DISPOSITION

Although in the border region there are no doubt juveniles for whom substantial travel limitations are an appropriate means of promoting rehabilitation and preventing future criminality, the record here does not support

imposition of such limitations. Let a peremptory writ of mandate issue directing the juvenile court to vacate the September 17, 2008 order and enter an order limited to the following: "Minor shall give the Probation Officer notice prior to entering the United States."

McIntyre, J., and Irion, J., concurred.