[No. B228821. Second Dist., Div. Four. May 16, 2011.]

In re QUOC THAI PHAM on Habeas Corpus.
In re HAROLD P. BROWN on Habeas Corpus.
In re ARTHUR LEE NEAL, SR., on Habeas Corpus.

COUNSEL

Edmund G. Brown, Jr., and Kamala D. Harris, Attorneys General, Julie L. Garland, Assistant Attorney General, Julie A. Malone and Charles Chung, Deputy Attorneys General, for Appellant The People.

Michael P. Judge and Ronald L. Brown, Public Defenders, Dylan Ford, Albert J. Menaster, Mark Harvis, John Hamilton Scott and Susanne Blossom, Deputy Public Defenders, for Petitioner Harold P. Brown.

Janice Y. Fukai, Alternate Public Defender, Jean M. Costanza and Cynthia Kairys, Deputy Alternate Public Defenders, for Petitioners Quoc Thai Pham and Arthur Lee Neal, Sr.

OPINION

**SUZUKAWA, J.**—Appellant Matthew Cate, as Secretary of the Department of Corrections and Rehabilitation, appeals from the trial court's November 1, 2010 order staying enforcement of Penal Code section 3003.5, subdivision (b) as to all registered sex offenders on active parole in Los Angeles County pending the resolution of petitions seeking a writ of habeas corpus that had been previously filed. In issuing the order, the court concluded that enforcement of the statute led to the virtual banishment of those parolees from Los Angeles County and thus the statute was unconstitutional. We find the court erred and reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

"On November 7, 2006, the voters enacted Proposition 83, The Sexual Predator Punishment and Control Act: Jessica's Law (Prop. 83, as approved by voters, Gen. Elec. (Nov. 7, 2006) . . . ." (*In re E.J.* (2010) 47 Cal.4th 1258, 1263 [104 Cal.Rptr.3d 165, 223 P.3d 31].) Proposition 83 revised the Penal Code in certain respects and included an amendment to Penal Code section 3003.5,[1] a statute that restricts where registered sex offenders on parole are allowed to reside. The initiative added section 3003.5, subdivision (b) (section 3003.5(b)), which provides: "Notwithstanding any other provision of law, it is unlawful for any person for whom registration is required pursuant to Section 290 to reside within 2000 feet of any public or private school, or park where children regularly gather." The restriction took effect on November 8, 2006, the effective date of Proposition 83. (*In re E.J., supra,* at p. 1263.)

---

[1] All further statutory references are to the Penal Code.

Quoc Thai Pham, Harold P. Brown, and Arthur Lee Neal, Sr. (collectively, petitioners), each filed a petition for a writ of habeas corpus, seeking an order enjoining the enforcement of the residency restriction set forth in section 3003.5(b) as to himself.[2] The court issued orders directing Cate to show cause why the petitions should not be granted and stayed the enforcement of section 3003.5(b) as to petitioners. On September 28, the court consolidated the three matters.

On October 7, 2010, petitioners filed an application for a temporary stay of enforcement of section 3003.5(b) as to all registered sex offenders on active parole in Los Angeles County. On November 1, the trial court granted petitioners' application. Appellant filed a timely appeal.

On November 16, 2010, appellant filed a petition for a writ of supersedeas. On November 18, we issued a temporary stay of the trial court's November 1 order. Petitioners filed opposition to appellant's petition and a motion to dismiss the appeal. On January 11, 2011, we denied petitioners' motion to dismiss the appeal and appellant's petition for a writ of supersedeas, vacated the stay, and expedited the appeal.

## DISCUSSION

### I. *The November 1 Order Is Appealable*

Petitioners renew their argument that the appeal must be dismissed for lack of an appealable order. They contend the November 1 order is an interim stay and there is no statute authorizing an appeal. Appellant responds that section 1507 allows an appeal from a "final order in a habeas corpus matter that grants all or part of the relief sought" and that the superior court order is a preliminary injunction, which is appealable. Petitioners urge the temporary stay is not a final order or a preliminary injunction. We agree with appellant that the order is appealable.

The November 1 order restrains future action by appellant with respect to the enforcement of a specific parole condition pending further hearings. As such, it "partakes of the nature of a preliminary injunction" and is thus appealable. (*In re Faucette* (1967) 253 Cal.App.2d 338, 340 [61 Cal.Rptr. 97] [allowing appeal by Director of Department of Corrections of order barring the department from imposing as a condition of parole that parolee could not reside at a particular location or violating his parole for doing so pending full hearing on the issue].)

---

[2] A fourth individual, Prentice R. Moreland, filed a petition requesting the same relief. The trial court granted Moreland's motion to be relieved from the obligation to register as a sex offender and his petition was dismissed as moot.

## II. *Standard of Review*

■ "In deciding whether to issue a preliminary injunction, a court must weigh two 'interrelated' factors: (1) the likelihood that the moving party will ultimately prevail on the merits and (2) the relative interim harm to the parties from issuance or nonissuance of the injunction. [Citation.] Appellate review is limited to whether the trial court's decision was an abuse of discretion. [Citation.]" (*Butt v. State of California* (1992) 4 Cal.4th 668, 677–678 [15 Cal.Rptr.2d 480, 842 P.2d 1240].) "The party challenging the superior court's order has the burden of making a clear showing of such an abuse. [Citation.] Appellate courts typically state that an abuse of discretion occurs when the lower court exceeds the bounds of reason or contravenes the uncontradicted evidence. [Citation.]" (*Smith v. Adventist Health System/West* (2010) 182 Cal.App.4th 729, 739 [106 Cal.Rptr.3d 318].)

"The trial court's determination must be guided by a 'mix' of the potential-merit and interim-harm factors; the greater the plaintiff's showing on one, the less must be shown on the other to support an injunction. [Citation.] Of course, '[t]he scope of available preliminary relief is necessarily limited by the scope of the relief likely to be obtained at trial on the merits.' [Citation.] A trial court may not grant a preliminary injunction, regardless of the balance of interim harm, unless there is some possibility that the plaintiff would ultimately prevail on the merits of the claim. [Citation.] Unless potential merit is conceded, an appellate court must therefore address that issue when reviewing an order granting a preliminary injunction." (*Butt v. State of California, supra*, 4 Cal.4th at p. 678.)

Findings of facts are reviewed for substantial evidence. Where the issue is whether the trial court correctly interpreted and applied statutory or constitutional law, we conduct an independent review. (*People ex rel. Gallo v. Acuna* (1997) 14 Cal.4th 1090, 1136–1137 [60 Cal.Rptr.2d 277, 929 P.2d 596].)

## III. *The Probability of Petitioners Prevailing on the Merits*

Petitioners contended that section 3003.5(b) is unconstitutional as applied in that its enforcement resulted in the banishment of parolees who were required to register pursuant to section 290 from Los Angeles County. In its order, the trial court noted: "The petitioners have alleged numerous facts which, if found true, would demonstrate that there is insufficient housing which is both compliant with the residency restriction in Pen. Code § 3003.5(b) and is also affordable. If, as the petitioners have alleged, compliant, affordable housing is virtually non-existent in Los Angeles County, enforcement of Pen. Code § 3003.5(b) would effectively banish the relevant

parolees from residential living within the vast majority of Los Angeles County and force them to make the choice between homelessness and incarceration."

Relying on *People v. Mosley* (2010) 188 Cal.App.4th 1090 [116 Cal.Rptr.3d 321], review granted January 26, 2011, S187965, and cases that examined the validity of probationary orders, the court concluded that restrictions on a parolee's right to choose where to live constitutes traditional banishment and banishment "impermissibly 'impinges on constitutional entitlements—the right to travel and freedom of association.' " The trial court found that given the state of the law, "the facts alleged, and the longstanding proscription against banishment as a condition of parole, the petitioners have demonstrated a strong likelihood of success on the merits of the banishment claim."

Appellant does not challenge the factual underpinnings of the trial court's order—that it is very difficult for certain parolees to find compliant and affordable housing in Los Angeles County. Instead, he argues the court misconstrued the concept of banishment. Appellant contends that "[c]ourts have considered banishment as the expulsion of an individual from a particular community, city, county, state, or country." He relies on a decision from the Eighth Circuit, *Doe v. Miller* (8th Cir. 2005) 405 F.3d 700, and argues that "a limitation on a registered sex offender's residence does not effectuate banishment." Appellant cites the following language from *Doe*: "Unlike banishment, [the Iowa statute] restricts only where offenders may reside. It does not 'expel' the offenders from their communities or prohibit them from accessing areas near schools or child care facilities for employment, to conduct commercial transactions, or for any purpose other than establishing a residence." (*Id.* at p. 719.) From this, appellant asserts that unless a parolee is prohibited from traveling to a designated location, a necessary element of banishment is missing. He concludes that as there is nothing in section 3003.5(b) restricting a parolee's ability to visit or travel through any prohibited area, the residency restriction falls "outside the meaning of traditional banishment, [and] the superior court improperly interpreted and applied constitutional law in ruling that the residency restriction effectuates traditional banishment."

We disagree with appellant's position that banishment requires a restriction on one's right to travel. First, it does not appear to comport with California law. In *People v. Bauer* (1989) 211 Cal.App.3d 937 [260 Cal.Rptr. 62] (*Bauer*), the court considered whether a probationer's residence could be subject to his probation officer's approval. It concluded that the residency restriction "is all the more disturbing because it impinges on constitutional entitlements—the right to travel and freedom of association. Rather than being narrowly tailored to interfere as little as possible with these important

rights, the restriction is extremely broad. The condition gives the probation officer the discretionary power, for example, to forbid appellant from living with or near his parents—that is, the power to banish him." (*Id.* at p. 944.) Thus, the *Bauer* court found that a residency restriction, even though it did not prohibit the right to travel through the same area, unduly infringed on the probationer's constitutional rights. In *Alex O. v. Superior Court* (2009) 174 Cal.App.4th 1176, 1179–1180 [95 Cal.Rptr.3d 438], the juvenile court imposed probation conditions that required the probationer to live with his mother in Mexico. He was barred from entering the United States except to attend school, meet with his probation officer, complete the terms of probation, seek or maintain employment, or visit his father and family members. The appellate court panel concluded that because of the probationer's current living situation it was "not likely that any of the circumstances under which he is authorized to travel to the United States will arise during the course of his probation. . . . In short, although the juvenile court's order is not an express banishment from the United States, its practical effect on Alex is almost indistinguishable from a banishment." (*Id.* at pp. 1182–1183.) These cases suggest that banishment may occur even though the right to travel remains intact.

Second, banishment means one is expelled from the community. (See *Smith v. Doe* (2003) 538 U.S. 84, 98 [155 L.Ed.2d 164, 123 S.Ct. 1140].) If a person is barred from living in the United States, he or she loses all ties to this country. All participation in our society is terminated. This remains the case even if the person is allowed to pass through the territory from time to time. Thus, we decline to find that a necessary element of banishment is an infringement on the right to travel.

The more compelling question is whether traditional banishment requires total exclusion from the community. Is it unconstitutional to prevent a person from residing in a designated portion? Here, the trial court found that if petitioners' allegation that compliant, affordable housing was virtually nonexistent in Los Angeles County were true, then enforcement of section 3003.5(b) would effectively banish parolees who were registered sex offenders from the vast majority of the county. Neither the court nor petitioners has cited authority for the proposition that exclusion from a part of a community, even a substantial part, constitutes an unconstitutional banishment. Our research has disclosed none.

In California, the courts have invalidated orders that barred individuals from returning to the country (*In re Babak S.* (1993) 18 Cal.App.4th 1077 [22 Cal.Rptr.2d 893], the state (*Alhusainy v. Superior Court* (2006) 143 Cal.App.4th 385 [48 Cal.Rptr.3d 914]), and the county (*In re Scarborough* (1946) 76 Cal.App.2d 648 [173 P.2d 825]). In each case, the order in question

barred a return to any part of the restricted area and was found to constitute an improper banishment. No court in this state has held that exclusion from a part of a political subdivision, such as a county, constitutes banishment. Although the *Bauer* court used the term "banish" when it discussed whether the probationer could be barred from living in a specific area of the city, it did not conclude that the residential restriction in question constituted traditional banishment. Nor did it address the issue present here: Does exclusion from a part of the community equal banishment? We conclude the answer is "no."

Courts in other jurisdictions that have considered the question have reached the same conclusion. In *State v. Lhasawa* (2002) 334 Or. 543 [55 P.3d 477], the Oregon Supreme Court examined the propriety of a city ordinance that prohibited an individual who had been arrested for prostitution from entering any area designated as a " 'prostitution-free zone' (PFZ)" for a period from six days following the arrest and 90 days thereafter. (*Id.*, 55 P.3d at p. 479.) The defendant claimed that exclusion under the PFZ (prostitution free zone) ordinance was equivalent to banishment. The panel wrote: "Defendant's attempted analogy between banishment and exclusion under the PFZ ordinance is not apt. As the state points out, banishment traditionally meant exclusion from a sovereign's *entire territory* for life or a significant period of time. The exclusion at issue here, in contrast, pertains for a limited period of time to a limited part of the city's area." (*Id.* at p. 483, italics added.)

In *State v. Seering* (2005) 701 N.W.2d 655, the Iowa Supreme Court considered a challenge to a state law that prohibited convicted sex offenders from living within 2,000 feet of an elementary or secondary school or a childcare facility. (*Id.* at p. 659.) The party challenging the law, Seering, claimed that the statute resulted in banishment. The court answered, "Yet, while Seering may have a sense of being banished to another area of the city, county, or state, true banishment goes beyond the mere restriction of 'one's freedom to go or remain where others have the right to be: it often works a destruction on one's social, cultural, and political existence.' [Citation.] [The statute], to the contrary, only restricts sex offenders from residing in a particular area. Offenders are not banished from communities and are free to engage in most community activities. The statute is far removed from the traditional concept of banishment." (*Id.* at pp. 667–668.)

■ At most, petitioners allege that it is extremely difficult for parolees to find compliant housing. They do not claim it is impossible; nor did the trial court so conclude. Although it may be that parolees are excluded from residing in certain areas of Los Angeles County due to the placement of schools and parks where children congregate, there is no showing that they are barred from living in the county or participating in most community affairs. As a result, they are not subjected to traditional banishment and the trial court misconstrued the law in finding otherwise.

Even if we were to conclude, as petitioners urge, that exclusion from a substantial portion of the county has the practical effect on parolees that is virtually "indistinguishable" from banishment (*Alex O. v. Superior Court, supra,* 174 Cal.App.4th at p. 1183), the evidence before the trial court does not make clear where affected parolees are barred from residing. Although the court referred to 650 pending petitions that allege the county lacks compliant housing, its conclusion that parolees are doomed to a fate of homelessness or incarceration is merely an assumption. We do not know where the parolees who filed petitions sought housing. Is there no compliant housing in entire cities within Los Angeles County? Are parolees forced to live in a tiny segment of the county bordered by a few square miles? Perhaps an evidentiary hearing will bring answers to these questions and the court will be able to construct a grid showing where parolees can and cannot live, as has been done in other cases. At this juncture, however, there is insufficient evidence to find that parolees face banishment from the county, no matter how broadly that term is construed.

Petitioners also assert that section 3003.5(b) is unconstitutional because it infringes on their right to travel. They claim that the "constitutional prohibition against banishment is based, in part, on the fundamental constitutional right to travel." They cite case law demonstrating that the right to travel includes the right to migrate and relocate. However, it is clear that parolees do not share the same rights enjoyed by other individuals. Although "parolees retain constitutional protection against arbitrary and oppressive official action[,] [parole conditions] may govern a parolee's residence, his associates or living companions, his travel, his use of intoxicants, and other aspects of his life." (*Terhune v. Superior Court* (1998) 65 Cal.App.4th 864, 874 [76 Cal.Rptr.2d 841].) The trial court did not conclude that the restriction on petitioners' right to travel was improper. Rather, the court found that banishment as a condition of parole was not permitted because it "impermissibly 'impinges on constitutional entitlements—the right to travel and freedom of association.' [Citations.]"

Petitioners presented a number of arguments in their application for a countywide stay of enforcement of section 3003.5(b), but the trial court did not address them after determining that "petitioners have demonstrated a strong likelihood of success on the merits of the banishment claim." For that reason, we need go no further.

In the final analysis, petitioners' allegations, even if true, cannot substantiate their banishment claim and the trial court's finding that they are likely to prevail on the merits of that claim was error. It thus follows that the November 1, 2010 order cannot stand. (*Butt v. State of California, supra,* 4 Cal.4th at p. 678 ["A trial court may not grant a preliminary injunction,

regardless of the balance of interim harm, unless there is some possibility that the plaintiff would ultimately prevail on the merits of the claim."].)

## DISPOSITION

The November 1, 2010 order staying the enforcement of section 3003.5(b) as to all registered sex offenders on active parole in Los Angeles County is reversed.

Epstein, P. J., and Willhite, J., concurred.

A petition for a rehearing was denied June 15, 2011, and petitioners' petition for review by the Supreme Court was denied August 24, 2011, S194313.